**UNITED STATES of America, Plaintiff,**

**v.**

**David J. SHIELDS and Pasquale F. DeLeo, Defendants.**

**No. 90 CR 1044.**

United States District Court, N.D. Illinois, E.D.

Aug. 29, 1991.

See also 783 F.Supp. 1094.

agree to forego playing the recording of that conversation.

Thomas M. Durkin, Michael J. Shepard, Asst. U.S. Attys., Chicago, Ill., for U.S.

Dan K. Webb, Steven F. Molo, Winston & Strawn, Chicago, Ill., (G. Robert Blakey, Notre Dame Law School, Notre Dame, Ind., of counsel), for defendant David J. Shields.

Samuel V.P. Banks, Allan A. Ackerman, Joelle Hillory Hollander, Allan A. Ackerman, P.C., Chicago, Ill., for defendant Pasquale F. DeLeo.

## MEMORANDUM OPINION AND ORDER

ILANA DIAMOND ROVNER, District Judge.

At the conclusion of the government's redirect examination of its cooperating witness, Robert Cooley, counsel for defendant David J. Shields expressed his intent to question Cooley regarding certain out-of-court statements he had previously made regarding the purported trustworthiness of defendant Pat DeLeo. Cooley made these statements in a covertly recorded conversation he had with DeLeo's law partner, State Senator John D'Arco, Jr., in October, 1989, approximately 13 months after the events underlying this case. In that conversation, Cooley said, among other things, "Twice I caught him [DeLeo] cheatin' me," and "I said John he's cheatin' me but he's also cheatin' your kid, and cheating everybody, I say you know I don't trust this guy, if a guy's cheatin' you he's cheatin' you." (Transcript of Oct. 12, 1989 Conv. between Cooley and D'Arco at 42–43.) Cooley then went on to describe two instances in which DeLeo had pocketed money from clients which he was supposed to have shared with Cooley in order to compensate him for work Cooley had done. (*Id.* at 42–43.)

Shields' counsel contended that inquiry into these statements was justified in order to impeach testimony on redirect examination. On redirect, the government reestablished what Cooley's thoughts had been when he initially approached DeLeo about the fictional *Nichols v. Wilson* case that he was handling:

Q: Mr. Cooley, when you were being asked questions by Mr. Webb, he went through the conversations you had with Pat Marcy, and at the end of those questions, you said you did not want the case to be before Shields. Do you remember that?

A: Yes, sir.

Q: Would you explain what you meant by that?

A: Well, I wanted the case to go before a judge I had already dealt—I had already dealt with.

Q: Did there come a time when your opinion about that changed?

A: Yes, sir.

Q: When did that happen?

A: After my conversation with Pat De-Leo.

(Tr. at 985; *see also id.* at 1000 (Cooley did not think he would lose the case based upon what DeLeo had told him).) Later in the redirect, Cooley affirmed, as he had on cross-examination, that he did not believe DeLeo was scamming him (*id.* at 1005) and did believe that DeLeo was in fact paying Shields (*id.* at 1012).

Based upon these inquiries, Shields contended that he must be permitted to examine Cooley about his 1989 statements to D'Arco. Shields argued that the government had placed DeLeo's veracity in issue by establishing on redirect that Cooley had changed his opinion of Shields based upon what DeLeo had told him and that Cooley did not doubt DeLeo's representations. (Tr. at 1017.) Thus, in Shields' view, inquiry regarding Cooley's statements to

D'Arco—to the effect that DeLeo was a "cheat"—was proper as a means to impeach this testimony. The government objected to this intended line of inquiry (*id.* at 1017–18) and the Court sustained the objection (*id.* at 1019, 1023–24.)

The Court issues this order for purposes of reiterating and detailing for the record its reasons for precluding inquiry into Cooley's prior out-of-court statements to D'Arco. Shields' counsel initially sought to question Cooley about these statements during his cross-examination of Cooley, in order to establish that Cooley had reason to doubt DeLeo's representations regarding Shields' willingness to fix cases. (*See* Tr. at 633–35.) In response, the government indicated that if Shields were allowed to inquire into this area, it would inquire into prior instances in which Cooley and DeLeo had allegedly fixed cases together. (*See id.* at 634–35.) After having the parties voir dire Cooley outside the presence of the jury (*id.* at 643–52), the Court ruled that it would permit both inquiries (*id.* at 653). At this juncture, Shields decided not to question Cooley about his statements to D'Arco, and the matter was temporarily put to rest. (*Id.* at 656.) The issue resurfaced at the conclusion of cross-examination, when the government revealed that it still intended to elicit testimony from Cooley on redirect examination regarding the case-fixing which he and DeLeo had allegedly engaged in with one another in the past. The government contended that such testimony was necessary in order to explain why Cooley would trust DeLeo's representations regarding Shields. (*Id.* at 711–19.) The Court initially indicated that it would permit the testimony. (*Id.* at 751). However, after an evening's reflection, the Court ruled that because Shields had foregone the attempt to establish that Cooley had described DeLeo as a "cheat" to D'Arco, there was no need for the government to attempt to bolster Cooley's credibility by delving into his prior alleged exploits with DeLeo. (*Id.* at 883; *see also* Minute Order dated Aug. 23, 1991.) The government vigorously sought reconsideration from the Court (*id.* at 964–81), but without success (*id.* at 984).

It is against this backdrop that the government asked Cooley on redirect examination when it was that he came to believe that Shields could be bribed and whether he doubted DeLeo's assertions on this point. Shields contended that these inquiries once again implicated the soundness of Cooley's trust in DeLeo, and opened the door to exploration of Cooley's statements to D'Arco. (Tr. at 1017.)

As the Court has stated orally, the government's redirect examination was most restrained. (Tr. at 1019.) The two questions did not place Cooley's willingness to believe DeLeo any more in issue than Shields' cross-examination; if anything, these questions were in the nature of refresher questions summarizing Cooley's earlier testimony. Indeed, if anyone, it was Shields who pushed this matter by repeatedly asking Cooley on cross whether he had reason to believe that DeLeo might be "scamming" him with respect to Shields. (*See, e.g., id.* at 663–64, 674, 675, 691, 749.) Thus, if there was a time to ask Cooley about his statements to D'Arco, it was on cross-examination. As set forth above, the Court gave Shields that opportunity, and at the last moment he declined it. (*Id.* at 656.) The government's redirect did not change the status quo. Cooley was not asked to explain why he trusted DeLeo, and his statements that he did believe DeLeo were merely brief reiterations of his prior testimony on the same point.

As the Court also indicated orally, inquiry regarding Cooley's statements to D'Arco would open the door to a mini-trial as to what Cooley meant and the circumstances which led Cooley to make the remarks. (Tr. at 1022, 1023–24.) The Court carefully reviewed the transcript of Cooley's conversation with D'Arco; moreover, the Court heard the proffer of the testimony the government would elicit in order to rehabilitate Cooley once the defense would attempt to impeach his purported trust of DeLeo with his prior statements to D'Arco. Cooley's statements to D'Arco are not directly impeaching of his testimony that he trusted DeLeo when it came to fixing judges. As the transcript of the D'Arco

conversation reveals, the two instances in which DeLeo allegedly "cheated" Cooley were instances in which Cooley had performed work on behalf of a client and DeLeo had simply withheld compensation received from those clients, telling Cooley the work had been done as a "favor" to the client. The government also contends that Cooley made these statements to D'Arco in the context of explaining to D'Arco (who was DeLeo's law partner and who is now the subject of a separate indictment pending before Judge George Lindberg) why he (Cooley) had broken off his affiliation with DeLeo. (Tr. at 1022–23.) In any event, it is apparent that admission of Cooley's remarks to D'Arco would prompt the government to elicit substantial additional testimony in order to place the remarks in context. The result would be a lengthy foray into events which have little or nothing to do with the allegations of the indictment. Under these circumstances, the Court found the probative value of the proposed re-cross to be substantially outweighed by the confusion, waste of court time, and likely prejudice to DeLeo which admission of the testimony would cause.

For these reasons, the Court has precluded inquiry into Cooley's statements to D'Arco.